UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FREEDOM MORTGAGE CORPORATION,

                Plaintiff,

-against-

JAMES M. BULLOCK, JR., DEBORAH DURUSSEL, CLERK OF THE SUFFOLK COUNTY TRAFFIC & PARKING VIOLATIONS AGENCY,

                Defendants.

**MEMORANDUM & ORDER**
**19-CV-664 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Mortgage foreclosure actions proliferate this court. We often treat them as creatures of procedure, devoid of real people removed from real homes. But procedure cuts both ways. And although these actions can march forward to a steady drumbeat, courts must ensure that plaintiffs follow the correct process and the applicable statutes are respected. This case is no exception. Now almost six years old, it reads as a tragic commentary on the lack of attention to detail by one of America's largest mortgage companies. In its fourth attempt to secure a default judgment on 4 Krause Street, Bay Shore, New York 11706, it again fails to rectify the same issue that has plagued its last three attempts. It also contradicts itself and—in violation of Real Property Actions & Proceedings Law "RPAPL" § 1304—does not sufficiently allege that it served adequate notice before commencing its action. The court therefore again DENIES its motion for default judgment.

## I. PROCEDURAL HISTORY

Pending before the court is Plaintiff Freedom Mortgage Corporation's ("Freedom Mortgage") fourth motion for default judgment. (Pl.'s Fourth Mot. for Default J. (Dkt. 65) ("Mot.").) Freedom Mortgage initially brought an action to foreclose on a mortgage

1

encumbering a Suffolk County property on February 4, 2019. (Compl. (Dkt. 1).) When Defendants James M. Bullock, Jr. ("Bullock") and Deborah DuRussel ("DuRussel") (collectively, the "Owners") failed to answer or otherwise appear despite service, the Clerk of Court entered a Certificate of Default against those Defendants. (Certificate of Default (Dkt. 19).) Over the next five years, Freedom Mortgage proceeded to file three motions for default judgment, all of which were either denied or withdrawn. (Pl.'s First Mot. for Default J. (Dkt. 21); First Report & Recommendation (hereinafter "R&R") (Dkt. 37); Order Adopting First R&R (Dkt. 39); Pl.'s Second Mot. for Default J. (Dkt. 43); Second R&R (Dkt. 46); Order Adopting Second R&R (Dkt. 48); Pl.'s Third Mot. for Default J. (Dkt. 51); R&R on Third Mot. for Default (Dkt. 55); Order Withdrawing Third Mot. for Default (Dkt. 57).)

On February 21, 2025, Freedom Mortgage filed its fourth motion for default judgment. (Mot.) That same day, the court referred the motion to Magistrate Judge Robert M. Levy for an R&R pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (February 21, 2025 Order Referring Mot.) Magistrate Judge Levy issued the annexed R&R on September 29, 2025, recommending that the court grant Freedom Mortgage's motion for default judgment. (Fourth R&R (Dkt. 69) at 1.) Specifically, Magistrate Judge Levy recommended that:

> Plaintiff's motion for a default judgment of foreclosure and sale be granted in the amount of $453,025.21, plus interest at the rate of 4.5 percent from July 1, 2024 to the date of judgment, and that plaintiff be awarded costs in the amount of $2,297.01. I further recommend that a referee be appointed to effectuate a sale of the Subject Property and distribute the funds from such sale in accordance with RPAPL § 1354.

(*Id.* at 10.) No party has objected to Judge Levy's R&R, and the time to do so has passed. *See* Fed. R. Civ. P. 72(b)(2).

## II. FACTUAL BACKGROUND

The court recites the facts as laid out in its Order Adopting the Second R&R. On October 14, 2011, the Owners executed a note in the amount of $245,611.00, secured by a mortgage encumbering the property at 4 Krause Street, Bay Shore, New York 11706 (the "Subject Property"). (Compl. ¶¶ 1, 10-11.) On April 30, 2016, the original holder and owner of the note and mortgage, Continental Home Loans, Inc., assigned its rights to Freedom Mortgage. (*Id.* ¶ 12; Pl.'s Decl. (Dkt. 44) ¶ 3.)

Beginning on January 1, 2016, and continuing through the filing of the Complaint, the Owners failed to make the required monthly payments on their mortgage. (Compl. ¶ 13.) Each missed payment constituted an event of default. (*See* Note (Dkt. 1) at ECF p. 6.) Consequently, Freedom Mortgage filed its Complaint on February 4, 2019, naming the Owners and the Suffolk County Traffic & Parking Violations Agency, holder of a subordinate lien on the Property, as Defendants. (Compl. ¶¶ 3-5.) Although Freedom Mortgage served the Owners with the Complaint, (*see* Nov. 14, 2019 Summons (Dkt. 13); Nov. 21, 2019 Summons (Dkt. 16)), the Owners neither appeared nor answered. At Freedom Mortgage's request, the Clerk of Court entered default with respect to the Owners on December 20, 2019. (Dec. 20, 2019 Certificate of Default (Dkt. 19).)

On February 10, 2020, Freedom Mortgage moved for default judgment. (First Mot. for Default J.) At that time, the United States Court of Appeals for the Second Circuit was awaiting an answer to a question that it certified to the New York Court of Appeals regarding the necessary proof needed to show compliance with RPAPL §§ 1304 and 1306. *CIT Bank N.A. v. Schiffman*, 999 F.3d 113, 116 (2d Cir. 2021) (alteration in original) (quoting *Deutsche Bank Nat'l Tr. Co. v. Spanos*, 102 A.D.3d 909, 910 (2d Dep't 2013)); *see CIT Bank N.A. v. Schiffman*, 948 F.3d 529,

3

537-38 (2d Cir. 2020), *certified questions accepted*, 34 N.Y.3d 1137 (2020). This court then referred the motion for default judgment to Magistrate Judge Sanket Bulsara, who issued an R&R on July 31, 2020. (*See* First R&R.) Magistrate Judge Bulsara observed that the record left unclear whether Freedom Mortgage had complied with the notice requirements of RPAPL §§ 1304 and 1306. (*Id.* at 4.) Accordingly, in adopting the First R&R, this court denied the motion for default judgment without prejudice and stayed the filing of new dispositive motions pending resolution of the certified questions. (Oct. 13, 2020 Order (Dkt. 39).)

On March 30, 2021, the New York Court of Appeals answered the certified questions, *see CIT Bank N.A. v. Schiffman*, 36 N.Y.3d 550 (2021), and the Second Circuit issued its opinion on the appeal on May 28, 2021. *See CIT Bank N.A. v. Schiffman*, 999 F.3d 113 (2d Cir. 2021.)[1] Consequently, the court lifted the stay on May 28, 2021. (*See* May 28, 2021 Order Lifting Stay.) On October 4, 2021, Freedom Mortgage renewed its motion for default judgment, which was again referred to Magistrate Judge Bulsara. (Second Mot. for Default J.; Oct. 5, 2021 Order Referring Mot.) On March 11, 2022, Magistrate Judge Bulsara issued the Second R&R, recommending that the court deny the motion and direct Freedom Mortgage to file a letter demonstrating compliance with the statutory notice requirements of RPAPL §§ 1304 and 1306 before moving for default judgment again. (*See* Second R&R) Freedom Mortgage filed objections to the Second R&R on March 22, 2022. (Pl.'s Objs. (Dkt. 47).) This court overruled those objections on September 23, 2022. (Sept. 23, 2022 Order (Dkt. 48).) Freedom Mortgage then renewed its default judgment motion on January 12, 2023 (Third Mot. for Default J.) This was again referred to Magistrate Judge Bulsara on June 6, 2023. (June 6, 2023 Order Referring Third Mot.) On August 4, 2023,

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

Magistrate Judge Bulsara issued the Third R&R. He recommended that the court deny Freedom Mortgage's motion and direct it to demonstrate compliance with RPAPL § 1304. Specifically, he recommended that Freedom Mortgage be made to confirm that the borrower's residence was subject property at the time the 90-day notice was required to be served and submitting proof of the Owners' last known address. (Third R&R at 13.) In response Freedom Mortgage moved for, and this court granted, withdrawal of the default judgment motion. (Not. of Withdrawal (Dkt. 56); Order Granting Withdrawal (Dkt. 57).)

After a six-month period of inactivity, this court ordered a status report by April 23, 2024. (Apr. 2, 2024 Status Report Order.) The instant Motion for Default Judgment, Plaintiff's fourth, was filed on February 21, 2025. (Mot.) This court referred the motion to Magistrate Judge Levy that same day. (Feb. 21, 2025 Order Referring Fourth Mot.) He issued his R&R on September 29, 2025 (Fourth R&R.) Before addressing that fourth R&R, the court summarizes the reasons Magistrate Judge Bulsara principally recommended denying the motion for default judgment in the Third R&R.

### III. THE THIRD R&R'S RECOMMENDATION OF DENIAL OF DEFAULT JUDGMENT MOTION

Magistrate Judge Bulsara's Third R&R recommended denying Freedom Mortgage's motion for default judgment because it failed to produce evidence sufficient to:

> "(1) demonstrate, in the form of an affidavit or through other supporting documentation, that the Subject Property was the [Owners'] residential address at the time the 90-day notice was required to be served; (2) in accordance with Local Rule 55.2, mail any default judgment motion papers to the [Owners'] last known addresses, whether at the Subject Property or elsewhere, and submit to the Court an affidavit or other proof that the difference

5

in mailing location was due to a change of residential address . . ."

(Third R&R at 13.) RPAPL § 1304 requires that notice be given to mortgagors in a foreclosure action at least 90 days before a legal action is commenced. *See* RPAPL § 1304. "Proper service of an RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." *CIT Bank N.A. v. Schiffman*, 999 F.3d at 116 (quoting *Deutsche Bank*, 102 A.D.3d at 910). The 90-day notice must be sent "by registered or certified mail and also by first-class mail to the last known address of the borrower, and to the residence that is the subject of the mortgage." RPAPL § 1304(2). The notice must include the exact debt owed and other statutorily prescribed information and language. *Id.* § 1304(1).

A lender can establish compliance with § 1304 in one of two ways: (1) if the "notice or other document was sent through evidence of actual mailing (e.g., an affidavit of mailing or service)"; or (2) "by proof of a sender's routine business practice with respect to the creation, addressing, and mailing of documents of that nature." *Schiffman*, 36 N.Y.3d at 556. Under the second method, a "lender may create a rebuttable presumption that it complied with § 1304 by submitting 'proof of a standard office mailing procedure designed to ensure that items are properly addressed and mailed, sworn to by someone with personal knowledge of the procedure.'" *Schiffman*, 999 F.3d at 116 (quoting *Citibank, N.A. v. Conti-Scheurer*, 172 A.D.3d 17, 21 (2d Dep't 2019).)

In the Third R&R, Magistrate Judge Bulsara noted that the Second R&R had found that Freedom Mortgage had failed to comply with § 1304 and would need to submit more evidence to credit its assertion of service. (Third R&R at 3-4.) Besides neglecting to attach the 90-day disclosure notices to its motion even though it

had attached an affidavit that such documents were included, Freedom Mortgage provided "no evidence to suggest the notices were mailed to the [Owners'] last known address." (Third R&R at 7.) While the 90-day notices were mailed to the Subject Property, the motion papers were mailed to different and separate residential addresses for the parties: 512 Walnut Woods Drive, Morrisville, North Carolina 27560 for Bullock, and 28 Jefferson Avenue, Massapequa Park, New York 11762 for DuRussel. (*Id.*) Magistrate Judge Bulsara reasoned that, while it is "of course, possible that [the Owners] moved during the pendency of the case, such that the Subject Property was their residential addresses at the time the 90-day notice was required to be served[,] . . . that fact would have to be established through an affidavit or other proof, which is not present here." (*Id.*)

In response, Freedom Mortgage submitted to Magistrate Judge Bulsara a notarized affidavit of employee Erica Tracy, in which she attested to her personal knowledge of the company's ordinary business practices in the creation, addressing, and mailing of 90-day notices. (*Id.* at 8.) Tracy averred that, in accordance with Freedom Mortgage's standard business procedures, 90-day notices were mailed via certified and first-class mail to the "last known address of the [Owners] at 4 Krause St, Bay Shore, NY 11706-2618 which is the residence that is the subject of the mortgage." (*Id.*). She did not, however, "articulate whether the Subject Property was the [Owners'] residence at the time of mailing the 90-day notice—that is, in the past tense—or as her statement implie[d], is now their current present-day residence, or both." (*Id.*)

Magistrate Judge Bulsara explained that "by failing to specify the timeframe in which the [Owners] resided at the Subject Property, Freedom Mortgage has failed to dispel the Court's prior confusion about their last known address, and has, in fact, created more confusion." (*Id.* at 9.) If the subject property was the

couple's last known address, then the default judgment motion papers should have been mailed there instead. (*Id.*) As they were mailed to two different addresses, it appeared to Magistrate Judge Bulsara that Freedom Mortgage had not complied with Local Rule 55.2(c), which could serve as a "sufficient independent basis to deny default judgment." (*Id.*) Freedom Mortgage "could have easily cured this deficiency by doing just as the Court [had] recommended in its prior [Second] R&R—by demonstrating, in the form of an affidavit or through other supporting documentation, that the Subject Property was the Owners' residential address at the time the 90-day notice was required to be served, and that the Owners moved after the commencement of this foreclosure action." (*Id.*)

## IV.  LEGAL STANDARDS

The court now examines whether Freedom Mortgage's efforts in its most recent bite at the apple resolve this question. They do not.

### A. Standard of Review of an R&R

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see Fed. R. Civ. P. 72(b); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). If, like here, a party fails to raise the objection at issue, the court reviews that R&R for clear error. *Velasquez v. Metro Fuel Oil Corp.*, 12 F. Supp. 3d 387, 397 (E.D.N.Y. 2014). "A district court is justified in finding a magistrate judge's ruling clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 177-78 (S.D.N.Y. 2008).

B.  Default Judgment

A court retains the discretion to determine whether a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); *see also Taylor v. 312 Grand St. LLC*, 2016 WL 1122027, at *3 (E.D.N.Y. Mar. 22, 2016). Despite a defendant's default, the plaintiff bears the burden of demonstrating that its unchallenged allegations and all reasonable inferences drawn from the evidence that it provides establish the defendant's liability on each asserted cause of action. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). "In other words, 'after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.'" *A. & R. Lobosco, Inc. v. Superior Trading, Inc.*, No. 15-CV-3737 (SJ) (ST), 2016 WL 5723982, at *2 (E.D.N.Y. Sept. 14, 2016), *R&R adopted*, 2016 WL 5719720 (Oct. 3, 2016).

"A default does not establish conclusory allegations, nor does it excuse any defects in the plaintiffs' pleading." *Mateo v. Univ. Language Corp.*, No. 13-CV-2495 (NGG) (JO), 2015 WL 5655689, at *4, *6–7 (E.D.N.Y. Sept. 4, 2015) (finding defendant was not plaintiff's employer based on his testimony that contradicted allegations in the complaint), *R&R adopted*, 2015 WL 5664498, at *1 (Sept. 23, 2015). For example, an allegation is not "well-pleaded" if it is contradicted by other evidence put forth by the plaintiff. *See id.* at *6–7; *Montblanc-Simplo GmbH v. Colibri Corp.*, 739 F. Supp. 2d 143, 151 (E.D.N.Y. 2010) ("[O]nce plaintiffs provided an actual picture of the allegedly infringing pen that contradicted the allegations in the Complaint, those allegations would no longer be considered well-pleaded."). "In determining whether to enter a default judgment, the court is free to consider a number of factors that may appear from the record before it."

Court's Entry of a Default Judgment – Discretion, Wright & Miller, Fed. Prac. & Proc. Civ. § 2685 (4th ed.) (2017).

### C. Section 1304 Compliance

"The underlying purpose of [§ 1304] is 'to afford greater protections to homeowners confronted with foreclosure.'" *Wells Fargo Bank, N.A. v. Yapkowitz*, 199 A.D.3d 126, 131, 155 N.Y.S.3d 163 (2d Dep't 2021). In that vein, the statute aims "to aid the homeowner in an attempt to avoid litigation" by addressing "a typical lack of communication between distressed homeowners and their lenders prior to the commencement of litigation" and by "bridg[ing] that communication gap in order to facilitate a resolution that avoids foreclosure by providing pre-foreclosure notice . . . and an additional period of time . . . to work on a resolution." *Id.*

Courts in this district routinely review § 1304 compliance on motions for default judgment. *See Miss Jones, LLC v. Viera*, No. 18-CV-1398 (NGG) (SJB), 2020 WL 3002359, at *1 (E.D.N.Y. Jan. 29, 2020) ("Courts must determine whether a plaintiff has complied with RPAPL § 1304, even on a default judgment motion, because failure to comply with § 1304 is a sufficient basis to deny foreclosure relief."), *R&R adopted*, 2020 WL 1527141 (Mar. 31, 2020); *Wilmington Sav. Fund Soc'y, FSB v. White*, No. 17-CV-2288 (CBA) (VMS), 2019 WL 4014842, at *4 (E.D.N.Y. May 28, 2019) ("Both state and federal courts in New York . . . have found that proper service of a RPAPL § 1304 notice on the borrower is a condition precedent to the commencement of a foreclosure action and plaintiff has the affirmative obligation to establish strict compliance with RPAPL § 1304.").

As in other cases where "[p]laintiff's accounts of its service of process and of its service of the 90-day notice undermine each other," *Windward Bora, LLC v. Thompson*, No. 18-CV-1811 (NGG) (RML), 2020 WL 1242828 (E.D.N.Y. Mar. 16, 2020), "it

10

is not the duty of the court to speculate as to whether plaintiff has satisfied the procedural requirements necessary to obtain the relief it requests." *See Prescription Containers, Inc. v. Cabiles*, No. 12-CV-4805, 2014 WL 1236919, at *6 n.6 (E.D.N.Y. Feb. 14, 2014), *R&R adopted*, 2014 WL 1237098 (Mar. 25, 2014). Courts routinely rule against foreclosure plaintiffs that fail to effect such notice. *See, e.g., Deutsche Bank Nat'l Tr. Co. v. Ghosh*, No. 5038/16, 2022 WL 3904584, at *2 (2d Dep't Aug. 31, 2022) ("[T]he plaintiff failed to establish its prima facie entitlement to judgment as a matter of law, as it failed to show its strict compliance with RPAPL 1304(2)."); *Freedom Mortg. Corp. v. Brocking*, No. 23-CV-0187 (DLI) (LGD), 2024 WL 436531 (E.D.N.Y. Feb. 5, 2024).

## V.     APPLICATION

The court now addresses Plaintiff's new evidence. For the reasons it details, each dooms Freedom Mortgage's motion.

### A.  Review of R&R for Clear Error

The Fourth R&R commits clear error with respect to the sufficiency of evidence produced by Plaintiff to satisfy its burden that it fully complied with RPAPL § 1304. Although it aptly dispensed with many of the procedural points of the default process, the opinion should have more closely considered the mandate imposed by the Third R&R, which charged that Freedom Mortgage provide a full accounting of its efforts to comply with RPAPL § 1304. (Third R&R, at 13.) Freedom Mortgage' attempts to cure its deficiency with new documents, but its efforts only amplify the "[c]ourt's prior confusion" about the correct service of the 90-day notices. (*Id.*)

### B. Contradictory Information

Freedom Mortgage sought to prove its compliance with § 1304 with two new documents. First, Plaintiff submitted an exhibit containing the § 1303 and § 1320 notices, affidavits of service for the summons and exhibits, and skip traces of both Bullock and DuRussel. (Exh. Aff. of Serv. and Skip Traces ("Skip Traces") (Dkt. 67-4).) These notices were served almost eight months after the action commenced on February 4, 2019. (*Id.* at ECF p. 4-10.) The service affidavits also admit that the Subject Property was vacant at the time of the attempted service of the complaints. The deponent stated that "the property is vacant; utilities off; vacancy sign on door." (*See id.* at ECF p. 10.)

To be sure, the affidavits establish that DuRussel was properly served with the complaint and summons on November 4, 2019, at 7:21 P.M. at the 28 Jefferson Avenue address where she identified herself to the service agent. (*Id.* at ECF p. 8.) But they do not state how long she had resided at that address. (*Id.*) And in Bullock's case, the service deponent swore that service for the summons and complaint was posted on "defendant's last known address at 512 Walnut Woods Drive" on November 9, 2019 at 3:51 P.M. (*Id.* at ECF 7.)[2]

The skip trace exhibits sow further confusion.[3] Conducted by Provest, LLC on November 6, 2019, Bullock's skip trace contains overlapping residence dates, suggesting simultaneous primary

---

[2] The deponent's affidavit states that the skip search "revealed that [Bullock's] most current address is that of 512 Walnut Woods . . . and this is confirmed (Via Investigative Report and Credit Header) through 9/2019." (*Id.*)

[3] Skip traces utilize record and internet searches to locate individuals for service of process. (*See generally* Skip Traces.)

residences.[4] For DuRussel, a skip trace conducted by the same agency on October 29, 2019 also reveals overlapping residence dates.[5]

At the very least, these documents fail to resolve the ambiguity identified in the Third R&R regarding the time that the individuals left the Subject Property. At worst, they suggest that Bullock lived elsewhere during the time he was allegedly served with the § 1304 notice. If the affidavits are taken at face value and read in combination with the skip traces, it is unclear whether Bullock resided at the Subject Property since 2017, and specifically if he lived there on October 9, 2018—the date the foreclosure notices were sent to the Subject Property. And lest we forget DuRussel, it is still a mystery when she left the Subject Property. The skip trace only identifies a single month (March 2019) when she allegedly resided at her new address.

These incongruous facts suggest that Plaintiff Freedom Mortgage has failed to carry its "affirmative obligation" to demonstrate strict compliance with § 1304. *White*, 2019 WL 4014842, at *4; *see id. Colibri Corp.*, 739 F. Supp. 2d at 151 (An allegation is not "well-pleaded" if it is contradicted by other evidence put forth by the plaintiff); *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, No. 20-CV-4776 (ER), 2022 WL 118387 (S.D.N.Y. Jan. 11, 2022), *aff'd*, 66 F.4th 77 (2d Cir. 2023) ("Further, the Court is

---

[4] The skip trace lists residence at the North Carolina address from 12/2017 – 09/2019, as well as the Subject Property from 11/2011 – 09/2019. (*Id.* at 12.) Confusingly, both say "confirmed" addresses—one through "Investigative Report and Credit Header" (the North Carolina Address) and the other through "Investigative Report and DMV Report" (the Subject Property address). (*Id.*) Neither, however, says "Current," as it did for DuRussel. (*Id.*)

[5] DuRussel's 28 Jefferson Ave address was "Confirmed Via Investigative Report and DMV Report" from "3/2019 – 3/2019"; the Subject Property is listed as "Current Via Investigative Report" from "11/2011 – 09/2019." (*Id.* at 14.)

not obliged to reconcile and accept as true pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference . . . ").

C. Unreliable Information

Plaintiff also submitted a new affidavit from Erica D. Tracy to cure the identified defects in her last affidavit. (*See* Third R&R, at 8; Second Tracy Aff. (Dkt. 67-7).) In submitting this updated affidavit Freedom Mortgage attempts to afford itself a rebuttable presumption of compliance through testimony of someone familiar with the § 1304 notice mailing procedure. *Schiffman*, 999 F.3d at 116. But the omissions, inconsistencies, and apparent lack of knowledge displayed by the affidavit bar Freedom Mortgage from availing itself of the *Schiffman* presumption.

In her new affidavit, Tracy testifies that "in accordance with Freedom Mortgage Corporation's . . . standard business practice" the 90 day notice was sent to Owners at their "most recent listing available from the Department of Financial Services" and their "last known address," which she avers was the Subject Property. (*Id.* at ECF p.3.) Tracy subsequently asserts that it was not until January 11, 2023, that DuRussel informed Freedom Mortgage by telephone that her new mailing address was then 28 Jefferson Avenue, Massapequa Park, New York 11762. (*Id.*)

The new affidavit fails to establish that the § 1304 notices were properly served for four reasons. First, Tracy could not have known that the Subject Property was in fact the Owners' last known address. There is no evidence that a more fulsome investigation was conducted for sending the § 1304 notice. Freedom Mortgage paid for the skip traces only after it was clear that the property was vacant.

Second, the court does not credit the assertion of the alleged call by DuRussel. While Plaintiff claims Tracy's factual averments

14

were "based on a review of the business records that were submitted with the Tracy Affidavit," this alleged call appears nowhere in the attached records. (Mot. at 12; *see generally* Second Tracy Aff.) Further, if Tracy was considering evidence outside of routinely kept business records to include in her affidavit, it strains credulity that she was unaware of the skip traces conducted four years prior in 2019,[6] and the actual completed service of DuRussel at the 28 Jefferson Avenue address that same year. "There is no requirement that a plaintiff in a foreclosure action rely on any particular set of business records to establish a prima facie case, so long as . . . the records themselves actually evince the facts for which they are relied upon[.]" *U.S. Bank N.A. v. Pickering-Robinson*, 197 A.D.3d 757, 759 (2d Dep't 2021). If Freedom Mortgage is relying on Tracy's Affidavit to support its case, it misplaces its support. Affiant's lack of knowledge undercuts her credibility, especially when considered in conjunction with the other evidence submitted as part of the instant motion. Thus, the court does not credit this affidavit, finding it unreliable. *See Owens v. Centene Corp.*, No. 20-CV-118 (EK), 2021 WL 878773 (E.D.N.Y. Mar. 9, 2021) ("The Court need not consider plaintiff's affidavit where it is clearly contradicted by the documentary evidence on which [Plaintiff] relies in support of [its] motion."); *Abrams v. United States*, No. 11-CV-672 ENV, 2012 WL 4086765 (E.D.N.Y. Sept. 17, 2012) ("A court need not assume the credibility of factual assertions . . . where the assertions are contradicted by the underlying record.").

Third, as pointed out in the Third R&R, if the court were to credit the affidavit's assertion, that would make the Subject Property the proper place of service for the complaint. Plaintiff does not

---

[6] The service affidavits, indicating completed service on DuRussel, were also part of Plaintiff's submission in support of its third motion for default judgment. (Exh. Aff. of Serv. (Dkt. 53-4).) This information was submitted to the court two years ago, and Tracy still does not appear to know where the Owners resided.

make a representation regarding when the Owners left the Subject Property, likely because they do not know when this occurred. While the skip traces and affidavits of service allow the court to credit Tracy that service of process was done correctly at the last known addresses, not at the Subject Property, they do nothing to clear up the confusion surrounding the Owners' residence(s) at the time the § 1304 notices were mailed.

Fourth, while the New York Court of Appeals blessed a procedure that created a presumption of service, nowhere did it spell out the specific dictates of a system to effect proper § 1304 service. The *Schiffman* court could not have considered how shoddy Freedom Mortgage's "standard office mailing procedure[s] designed to ensure that items are properly addressed and mailed" would be. *Schiffman*, 999 F.3d at 116. Considering the sizeable number of cases in this district in which Freedom Mortgage (and similar plaintiffs) fail to meet the minimum standards required to establish service of process, Freedom Mortgage should take efforts to ascertain whether defendants continue to reside at the subject properties before sending such notices to economize on its time and resources, as well as the resources and patience of the courts.[7]

---

[7] *See Freedom Mortg. Corp. v. Brocking*, 2024 WL 436531, at *5 (denying default judgment because "[t]he record before the Court is devoid of any evidentiary support that [the subject property in that case] was Defendant's "last known address"); *Freedom Mortg. Corp. v. Cadet*, No. 19-CV-3158 (RRM) (VMS), 2023 WL 6358070, at *2 (E.D.N.Y. Sept. 29, 2023) (same); *Windward Bora, LLC v. Thompson*, No. 18-CV-1811 (NGG) (RML), 2020 WL 1242828, at *4 (E.D.N.Y. Mar. 16, 2020) (same, and noting that "Plaintiff's accounts of its service of process and of its service of the 90-day notice undermine each other" as the former was delivered to defendant's actual address, and the 90-day notice delivered to the subject property in that case); *Freedom Mortg. Corp. v. Meurer*, No. 19-CV-1497 (PKC) (RML), 2023 WL 6593773, at *3 (E.D.N.Y. Apr. 14, 2023), *R&R adopted*, 2023 WL 6358041, at *4 (Sept. 29, 2023) (finding deficiencies with § 1304 notices and denying motion for default judgment).

16

## VI.   CONCLUSION

Plaintiff carries the burden of establishing satisfaction of compliance with § 1304, and has not done so. *See Schiffman*, 999 F.3d at 116. Freedom Mortgage appears to contradict its claims of service at the Owners' last known addresses and cannot avail itself of the *Schiffman* presumption. Freedom Mortgage has presented insufficient evidence for a court to credit its assertion that it served the Owners at their last known address with the required § 1304 notice. The more information they proffer, the farther away they fall from that conclusion. And as the Second Circuit has recognized, it is not the "court's job either to do the [parties'] homework or to take heroic measures aimed at salvaging the [parties] from the predictable consequences of self-indulgent lassitude." *Restivo v. Hessemann*, 846 F.3d 547, 592 (2d Cir. 2017). Freedom Mortgage must begin this process again. The Fourth R&R is REJECTED in full, and Freedom Mortgage is GRANTED leave to amend the complaint after Plaintiff has complied with § 1304 by serving the 90-day notices to the last known addresses of Defendants James M. Bullock, Jr. and Deborah DuRussel.[8]

SO ORDERED.

Dated:   Brooklyn, New York
         November 4, 2025

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[8] *See, e.g., Lightning 1179, LLC v. Rodriguez et al.*, No. 17-cv-06311 (E.D.N.Y. July 20, 2018) (Minute Entry) ("For the reasons stated on the record, the Court denied plaintiff's motion [for default judgment] and granted plaintiff leave to amend the complaint and re-file its motion after plaintiff has complied with the notice requirements set forth in . . . § 1304.").